UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| DONNA BRUSZEWSKI,  ) | |
| *Personally and as*  ) | |
| *the Executrix of the*  ) | |
| *Estate of Thomas*  ) | |
| *Bruszewski,*  ) | |
|   ) | |
| Plaintiff,  ) | Action No. 5:12-cv-46-JMH |
|   ) | |
| v.  ) | |
|   ) | |
| MOTLEY RICE, LLC,  ) | **MEMORANDUM OPINION AND ORDER** |
|   ) | |
| and  ) | |
|   ) | |
| PROVOST UMPHREY  ) | |
| LAW FIRM, LLP,  ) | |
|   ) | |
| Defendants.  ) | |

**       **    **    **    **    ****

This matter is before the Court upon the renewed motion of Motley Rice, LLC ("Motley") [DE 20] and the motion of Provost Umphrey Law Firm, LLP ("Provost") [DE 21] to dismiss Plaintiff's claims or, in the alternative, to compel arbitration. Plaintiff has filed a response in opposition to each Defendant's motion [DE 22, 23], and Defendants have filed their replies [DE 26, 27]. The Court, having reviewed the record and applicable law, is prepared to rule on Defendants' motions. For the following reasons, Defendants' motion to compel arbitration and motion to dismiss the complaint, and motion to dismiss Donna Bruszewski's

individual claims will be denied. Defendants' motion to dismiss punitive damages will be granted in part and denied in part.

I.   **BACKGROUND**

Plaintiff avers that, in 2006, her husband Thomas Bruszewski was diagnosed with asbestosis and mesothelioma, resulting from years of exposure to asbestos-containing products during his employment with General Motors. [DE 19, Amended Complaint at ¶ 8,9.] Following Mr. Bruszewski's diagnosis, the Bruszewskis, who lived in Kentucky, contacted Defendant Provost, a Texas-based law firm, in hopes of recovering damages based on Mr. Bruszewski's exposure to asbestos and resulting illness. On June 30, 2006, both Thomas and Donna Bruszewski signed a "Contract of Representation," in which Provost agreed to "investigate and evaluate" possible claims related to Thomas's asbestos-related illness. [DE 20-2, Provost Umphrey Contract[1]

---

[1]   Defendants filed the current motions as motions to dismiss, but filed their Contracts of Representation as exhibits. Rule 12(d) provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, a court may consider matters outside of the pleadings without converting to a Rule 56 motion if the documents - in this case, the contracts of representation forming the basis of Plaintiff's claims - are "referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Accordingly, consideration of the Provost Contract and the Motley Rice Contract will not act to convert this to a Rule 56 motion. All other items outside of the pleadings have been excluded from consideration by this Court.

2

("Provost Contract") at ¶1.] The contract provided that the Bruszewskis "employ[ed] and retain[ed] the Law Firm to represent [their] interests in any and all actions, claims or trial proceedings related to [Thomas Bruszewski's exposure to asbestos]." [DE 20-2, Provost Contract at ¶1.] Additionally, the Bruszewskis agreed that Provost could refer the matter to other lawyers or associate other attorneys if it deemed such action necessary. [DE 20-2, Provost Contract at ¶4.] The Bruszewskis "specifically authorized" Provost in the contract to associate co-counsel. [DE 20-2, Provost Contract at ¶4.] Provost required that "[p]rior to the referral or association becoming effective, [the Bruszewskis] shall consent in writing to the terms of the agreement after being advised of the identity of the lawyer or law firm involved," whether the fees would be divided, and the share of the fee divided by the attorneys. [DE 20-2, Provost Contract at ¶4.]

On September 11, 2006, Thomas Bruszewski passed away. In the meantime, Provost brought on Defendant Motley, a South Carolina firm with offices in various states throughout the country, as co-counsel to assist with the Bruszewski matter. In January of 2007, Plaintiff filled out and returned to Motley the "Contract of Representation" it had sent to her as part of a new client packet. Similar to Plaintiff's contract with Provost, the Motley contract stated that Motley would "represent my

3

interests in any and all actions, claims or trial proceedings related to [Thomas Bruszewski's asbestos exposure]." [DE 20-3, Motley Rice Contract ("Motley Contract") at ¶1.]   The Motley agreement provided that Provost "associated Motley Rice as co-counsel to assist in handling [the Bruszewskis'] claim and [Motley] and Provost [ ] will enter into a fee sharing agreement to share the attorneys fees generated in my case." [DE 20-3, Motley Contract at ¶5.]   The Motley agreement also provided, similarly to the Provost contract, a specific authorization for Motley to associate additional co-counsel and required the Bruszewskis to provide written consent upon request. [DE 20-3, Motley Contract at ¶5.]   While Plaintiff did not sign the contract, she provided both her and Thomas Bruszewski's names and social security numbers, as well as her physical and email addresses and mailed the contract back to Motley. [DE 20-3, Motley Contract at 7.]

No suit was ever instigated by Defendants on behalf of Donna and/or Thomas Bruszewski.   Plaintiff contends that Defendants negligently failed to file suit before the applicable statute of limitations expired.   Defendants now present a host of arguments, urging the Court to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, Defendants argue that the Court should compel

4

arbitration based on arbitration clauses included in both the Provost and Motley contracts.

## II.  DISCUSSION

### A.  Defendants' Motion to Compel Arbitration

### i.  Choice of law

After careful consideration, the Court concludes that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs this Court's review of the enforceability of both the Provost and Motley arbitration provisions in this instance.  Both contracts in question are "contract[s] evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" and, thus, fall within the purview of the FAA.  9 U.S.C.A. § 2.

The Provost contract contains the following provision:

> Any disputes relating to interpretation, enforcement or alleged breach of this agreement shall be submitted to binding arbitration in Beaumont, Texas, under the auspices of the Judicial Arbitration & Mediation Services, Inc., 1010 Lamar, Suite 1350, Houston, Texas.  Judgment on any arbitration award may be entered by any court of competent jurisdiction.  This includes any derivative claims, inclusive of legal negligence, fraud, duress, misappropriation of funds, or any other claims against PROVOST [] UMPHREY LAW FIRM, L.L.P., its partners, associates, or other representatives arising out of the legal services made the basis of this contract.

[DE 20-2, Provost Contract at ¶13.]  While the Provost contract provides that the procedures for arbitration are to be governed

by "JAMS" rules, the substantive law applied to the dispute is not set out in the contract.

On page six of seven, located beneath the heading "Termination of Representation," the Motley contract provides,

> Although I do not anticipate any dispute arising out of the terms of this Contract or my representation by Motley Rice, in the event such a dispute should arise, it is agreed between the parties that the less formal and more expeditious process of arbitration, rather than litigation, will be the mandated procedure for resolving any such dispute. Accordingly, it is agreed that any claims arising out of this contract or the performance by either party under this Contract shall be resolved exclusively through arbitration pursuant to the law of the State of South Carolina under the applicable statutes then in effect. Judgment upon an award rendered through arbitration in any such proceeding may be entered and enforced in any court of competent jurisdiction.

[DE 20-3, Provost Contract at ¶10.] The plain language in the arbitration provision indicates an intent to allow South Carolina law, presumably the South Carolina Uniform Arbitration Act, to govern the form of the arbitration. However, as Provost concedes, a South Carolina statute specifically excludes lawyer-client representation agreements from the South Carolina Uniform Arbitration Act. S.C. Code Ann § 15-48-10(b)(3). The Court is at a loss to understand why Motley would draft the provision to require arbitration under South Carolina laws that specifically preclude their application to this type of arbitration. Nonetheless, there is no question that the South Carolina Uniform Arbitration Act does not apply, and the FAA governs the

6

arbitration procedures under the Motley contract. However, the question of which state's laws apply remains because, like the Provost contract, there is no choice of law provision in the Motley agreement.

Under the FAA, arbitration agreements may be rendered invalid based on grounds that "exist at law" for the revocation of a contract. *See* 9 U.S.C. § 2. "In other words, whether an arbitration clause is enforceable is governed by state law." *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). Thus, state law determines the applicability of contract defenses such as fraud, duress or unconscionability. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *see Floss v. Ryan's Fam. Steak House, Inc.*, 211 F.3d 306, 314-15 (6th Cir. 2000).

In determining which state's contract law to apply, this Court will apply Kentucky's choice-of-law rules. *See Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) (citing *Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Although the parties' rationale is not set out in their briefs, they apparently believe that Kentucky law applies, and the Court agrees. Out of the states involved – Kentucky, South Carolina, Texas, and Michigan – Kentucky has the most significant contacts with the transaction and the parties at hand. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009)

7

(Kentucky has "consistently applied" § 188 of the Restatement (Second) of Conflict of Laws' "most significant contacts" test to contract disputes.)  Plaintiff resides in Kentucky, as did her husband prior to his death.  Defendants advertise nationally and sent their contracts and other paperwork to Plaintiff and her husband in Kentucky.  Further, Plaintiff presumably signed and/or filled out each contract of representation in Kentucky. Accordingly, the Court will apply Kentucky law to determine whether a valid agreement to arbitrate was formed.

    **ii.  Because the enforcement of both arbitration clauses would be unconscionable, neither clause will be enforced.**

In considering motions to dismiss or stay based on the existence of a valid arbitration agreement, courts have applied the standard applicable to motions for summary judgment.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n.9 (3d Cir. 1980); *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003); *Arnold v. Rent-a-Center, Inc.,* Civil Action No. 11-18-JBC, 2011 WL 1810145, *2 (E.D. Ky. May 12, 2011) (unpublished opinion).  In addition, the Sixth Circuit Court of Appeals has stated that "[i]n order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002).  Accordingly, the Court will treat the

motion to compel arbitration as it would a motion for summary judgment.

It is well established that "Kentucky law favors the enforcement of arbitration provisions." *Medcom Contracting Servs., Inc. v. Sheperdsville Christian Church,* 290 S.W.3d 681, 685 (Ky. App. 2009). Further, the party seeking to avoid an arbitration agreement bears an onerous burden. *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 857 (Ky. 2004). It is with this view that the Court considers the validity of the arbitration clauses at issue. The parties have put forth various arguments as to why a meeting of the minds did or did not occur with respect to the arbitration clauses. *See Gen. Steel Corp. v. Collins,* 196 S.W.3d 18, 20 (Ky. App. 2006) (holding that for an arbitration clause to be enforceable, parties must reach a "meeting of the minds" to arbitrate their disputes.) The Court does not reach that issue, however, because the two arbitration clauses before it are unconscionable.

The doctrine of unconscionability has developed as a narrow exception to the general rule that a contract will be enforced according to its terms. *Conseco Fin. Serv. Corp. v. Wilder,* 47 S.W.3d 335, 341 (Ky. App. 2001) (citing *Cline v. Allis-Chalmers Corp.,* 690 S.W.2d 764 (Ky. App. 1985)). The doctrine is "directed against one-side, oppressive and unfairly surprising

9

contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Conseco*, 47 S.W.3d at 341 (quoting *Louisville Bear Safety Serv., Inc., v. S. Cent. Bell Tel. Co.,* 571 S.W.2d 438, 439 (Ky. App. 1978)); see also *Hathaway v. Eckerle,* 336 S.W.3d 83, 88 (Ky. 2011). A contract "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other" is unconscionable. *Conseco*, 47 S.W.3d at 342 (quoting Black's Law Dictionary, 1694 (4th Ed. 1976)).

Under Kentucky law, courts assess procedural and substantive unconscionability. *Schnuerle v. Insight Comm. Co., L.P.,* 376 S.W.3d 561, 576 (Ky. 2012); *Conseco,* 47 S.W.3d at 343 n.22. Procedural unconscionability focuses on the procedures surrounding the agreement to arbitrate, and the form of the arbitration provision itself. *Id.* "Factors relevant to the procedural unconscionability inquiry include the bargaining power of the parties, 'the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Schnuerle*, 376 S.W.3d at 576 (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 875-76 (11th Cir. 2005)). Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to one side and

10

to which the disfavored party does not assent." *Conseco,* 47 S.W.3d at 342-43, n. 22 (quoting *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (Ky. App. 2001)). Each contract at issue appears to be a pre-fabricated fill-in-the-blank form and not the product of bargaining or negotiation. In other words, they are standardized adhesion contracts, "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Conseco*, 47 S.W.3d at 342 n.20 (citation omitted). These contracts are not *per se* improper. *Schnuerle*, 376 S.W.3d at 576. However, Kentucky courts apply heightened scrutiny where, as here, the parties involved are of unequal bargaining power. *Energy Homes v. Peay,* No. 2009-CA-000657, 2011 WL 1434639, *2 (Ky. App. Apr. 15, 2011) (unpublished opinion).

After considering these factors, the Court finds that the Motley arbitration agreement is procedurally unconscionable and that both arbitration agreements are substantively unconscionable. See *Schnuerle,* 376 S.W.3d at 581 n.12 (noting that either procedural or substantive unconscionability renders an arbitration agreement unenforceable). The Motley arbitration provision is procedurally unconscionable.[2] First, Plaintiff had

---

[2] The Court need not reach Plaintiff's argument that the Motley contract is not valid because it was not signed at this time

11

no meaningful choice when it came to the Motley contract. Her case was associated with Motley without her prior knowledge or specific consent. Under the terms of the contract, both firms then acted as co-counsel to handle the claims at issue. A significant amount of time had elapsed since she engaged the services of Provost. Considering that she was bound by the statute of limitations, it is unlikely that she had time to reject the Motley contract, locate a new lawyer, and start from scratch. Not only did the Motley arbitration clause fail to suggest independent legal counsel to advise about arbitration or to state that Plaintiff was waiving her right to a jury, it was located under the heading "Termination of Representation," which is misleading at best.

Although the Provost arbitration clause does not explicitly state that Plaintiff would be giving up her right to a jury trial and that the costs and rules would be different than those involved with litigation, she was advised to consult with other counsel concerning the negotiation of the "fee agreement." Thus, the Provost arbitration clause, while not a model of clarity, might pass muster were it the only arbitration provision at issue, but it is not.

---

because the Court finds that even if it was valid, the arbitration provision is unconscionable and, therefore, unenforceable.

Most troubling, however, is the practical, substantive effect of the operation of these two conflicting arbitration clauses. When considered together, the terms of both arbitration agreements become much more oppressive and, in fact, are directly contradictory. Since Motley had been working with Provost, it knew, or should have known, that Plaintiff had ostensibly agreed to arbitrate any disputes with Provost in Houston, Texas, under the auspices of JAMS. The Motley contract, however, requires arbitration under a different set of rules. While the FAA, rather than the South Carolina arbitration provisions, would govern the arbitration process, the fact remains that this dispute would be subject to two incompatible procedures for arbitration. In all likelihood, Plaintiffs claims are not easily severed between the two law firms. Requiring Plaintiff to arbitrate her claims relating to the Defendants' joint representation in two separate arbitrations in distant locations would be most oppressive in this instance. Moreover, to do so would place Plaintiff at a substantial disadvantage to prove her claims. There is a substantial likelihood that Plaintiff would be subjected to inconsistent resolutions of her claim by the two arbitrations, particularly given that each is governed by different rules. Rather than promoting the goals of arbitration, the effect of these two provisions is to create an oppressive and overly burdensome

process stacked against the Plaintiff.    Accordingly, the Court finds these arbitration provisions unconscionable and Defendants' motions to compel arbitration is denied.

**B.  Defendants' Motion to Dismiss Plaintiffs' claims**

**i. Plaintiff's claim is ripe.**

Defendants point out that litigation is not the only method of recovery available to Plaintiffs.    Instead, Plaintiffs may apply to certain bankruptcy settlement trusts that were "established specifically for the purpose of paying settlement to persons injured as a result of the bankrupt entities' asbestos-containing products." (DE 20-1.) *See generally Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009). Defendants argue that because Plaintiffs are able to recover through the bankruptcy trusts, Plaintiffs' damages are not fixed and non-speculative and that the legal malpractice claim has not accrued.  For the reasons described below, this Court finds that the Plaintiffs' cause of action for legal malpractice has accrued, and the claims shall not be dismissed.

 The statute of limitations in Kentucky[3] for legal malpractice provides that the action "shall be brought within one year of the date of the occurrence or from the date when the cause of action was, or reasonably should have been discovered

---

[3] This Court will apply Kentucky law to the Plaintiffs' claims as described in section A.i.

by the party injured." KRS 413.245. The "occurrence" or accrual of the cause of action is a "definable, readily ascertainable event." *Michels v. Sklavos,* 869 S.W.2d 728, 730 (Ky. 1994) (quoting *NW. Nat. Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)). This "triggering event [for the statute of limitations] is the date of irrevocable non-speculative injury." *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. 2005) (internal citations and quotations omitted.) Defendants falter, however, by arguing that Plaintiff's damages are not "fixed" because Plaintiffs may still recover from bankruptcy settlement trusts. The claim for malpractice in this case is that Defendants failed to bring certain claims during the applicable statute of limitations. Those claims were, and remain, wholly independent of the claims available by application to the bankruptcy settlement trusts.

The legal harm resulting from Defendants' failure to file during the statute of limitations became fixed and non-speculative the day after the statute of limitations had expired or, at the latest, when Plaintiffs discovered that Defendants failed to file their cause of action before the time ran. Plaintiffs allege that they would have been able to recover sums through litigation independent of their recovery through the bankruptcy trusts. The damages resulting from Defendants'

15

alleged negligence are the damages that Plaintiffs would have been able to recover in those claims.

This is not a case where the legal injury is speculative because the malpractice occurred during pending litigation and the underlying action is awaiting final adjudication. *See Doe v. Golden & Walters*, 173 S.W.3d 260 (Ky. App. 2005) ("Any alleged injury is merely speculative until the result of the appeal of the underlying litigation is final and the trial court's judgment becomes 'the unalterable law of the case.'" (quoting *Hibbard v. Taylor,* 837 S.W.2d 500, 502 (Ky. 1992)). By contrast, in this case, no underlying claim was ever initiated. Thus, there is no other claim to be resolved.

 Nor is this a case in which a suit against the tortfeasors was not foreclosed by the expiration of the statute of limitations. *See Mitchell v. TransAmerica Ins. Co.*, 551 S.W.2d 587 (Ky. App. 1977) (holding that, while the statute of limitations had expired in Kentucky, the plaintiff was able to recover under the same claim against the same parties in another jurisdiction with a longer statute of limitations, and thus the plaintiff was not damaged). Thanks to the alleged actions of Defendants, Plaintiffs are now permanently foreclosed from pursuing any avenues of recovery from certain companies. Defendants are entitled to argue mitigation of damages, or to claim any set-offs that may be available for the damages

16

calculation.  However, any credit or set-off does not affect the accrual the legal malpractice claim.

Thus, Defendants' motion to dismiss the complaint as premature is denied.

**ii. Plaintiffs' claims for lost punitive damages, as well as punitive damages, will not be dismissed.**

Although somewhat unclear, Defendants seemingly argue that Plaintiffs can neither recover direct punitive damages against the Defendants for their own gross negligence, nor the "lost" punitive damages that Plaintiffs would have been able to recover against the tortfeasor in the original suit.  In their Amended Complaint, Plaintiffs state that Defendants were "negligent, grossly negligent and/or reckless in rendering legal services and advice to the Plaintiff." [DE 19, ¶ 14.] These allegations are, at this point, sufficient to permit the claim for punitive damages against Defendants to continue at this stage of the case.  *Keeney v. Osborne*, 2010-SC-430, 2010-SC-397, slip op. at 34-35 (Ky. Dec. 20, 2012) ("[A] legal-malpractice plaintiff, in the same vein as any other plaintiff, must show that the attorney was grossly negligent in handling the case and acted with oppression, fraud, or malice.").

With respect to "lost" punitive damages, the issue is whether Kentucky law permits a plaintiff in a legal malpractice case to recover the punitive damages that he or she would have

17

recovered in the original action but for the attorney's legal malpractice. In a matter of first impression, the Kentucky Supreme Court has recently held that "lost" punitive damages are not recoverable in a legal malpractice action under Kentucky law. *Keeney v. Osborne*, 2010-SC-430, 2010-SC-397, slip op. at 34-35 (Ky. Dec. 20, 2012).

Accordingly, Defendants' motion to dismiss Plaintiffs' claim for punitive damages against the Defendants is denied. However, Defendants' motion to dismiss any claim for "lost" punitive damages as an element of damages in the legal malpractice claim will be granted.

### iii. Because Defendants have not shown that they did not represent Plaintiff individually, her individual claims will not be dismissed.

Defendants contend that Donna Bruszewski's claims for loss of consortium and her individual claims must be dismissed because they did not represent her.

In contending that Donna Bruszewski was not their client, Defendant Motley points to contractual language limiting its representation of the estate, which states, "I acknowledge that Motley Rice is representing the estate of the deceased only for the purposes of pursuing the survival and wrongful death claims, and is not assuming any responsibility in advising me in my capacity as personal representative or fiduciary of the estate."

18

Motley maintains that the language makes clear that Motley was representing the estate of the deceased only.

The natural reading of the clause in its entirety, however, indicates that Motley was representing the estate only for the purposes of pursuing the survival and wrongful death claims and that it was not representing the estate in probate or for any other purpose.  This reading is bolstered by the portion stating "[Motley] is not assuming any responsibility in advising me in my capacity as personal representative or fiduciary of the estate."  Clearly the "me" was Donna Bruszewski.  If Motley was not representing Donna at all, it would have been superfluous to provide that Motley was not advising her with respect to the estate.  Further, the contract of representation provides that Motley will investigate and evaluate possible claims for injuries suffered by "me/us," and the contract required signatures for the "spouse."  If Motley did not contemplate representing individuals for loss of consortium claims, the spouse's signature would be unnecessary.  Additionally, the contract does exclude certain claims, such as workers compensation claims.  Had Motley intended to exclude representation of spouses' loss of consortium claims, it could have included language to that effect.

Even more compelling is the provision reading, "I employ and retain Motley Rice to represent my interests in any and all

actions, claims or trial proceedings related to [Thomas Bruszewski's asbestos exposure]." [DE 20-3, ¶ 1.] When Donna Bruszewski received and filled out the contract, based on the plain language drafted by Motley, she could have reasonably understood that her claim for loss of consortium was within the scope of Motley's representation. *See Hazard Coal Corp. v. Knight,* 325 S.W.3d 290, 298 (Ky. 2010) (contractual language will be assigned its ordinary meaning).

Likewise, the Provost contract, which was signed by Thomas and Donna Bruszewski while Thomas was living, clearly contemplates representation of both parties. The contract clearly refers to "our possible claim or claims," and an understanding that the Bruszewski's were employing and retaining Provost to "represent our interests in any and all actions claims or trial proceedings related to the claim(s)." [DE 20-2, ¶ 1.] Provost represented Donna Bruszewski.

Accordingly, Defendants motions to dismiss Donna Bruszewski's individual claims are denied because both Defendants had an attorney-client relationship with her.

**III. Conclusion**

Accordingly, **IT IS ORDERED** that the renewed motions of Motley Rice, LLC [DE 20] and Provost Umphrey Law Firm, LLP [DE 21] to dismiss Plaintiff's claims or, in the alternative, to

compel arbitration are **DENIED IN PART AND GRANTED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that Motley Rice, LLC and Provost Umphrey Law Firm, LLP shall have twenty days from the entry of this Opinion and Order in which to file an Answer.

This the 21st day of December, 2012.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge